# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOYCE ANN BIGGS, | No. 2:11-CV-0692-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Docs. 15 & 16) and defendant's cross-motion for summary judgment (Doc. 19).

/ / /

/ / /

/ / /

## I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on December 29, 2005.  In the application, plaintiff claims that disability began on June 26, 2005.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on August 5, 2008, before Administrative Law Judge ("ALJ") Peter F. Belli.   In a November 10, 2008, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairments: low back pain, neck and shoulder pain, headaches, and anxiety;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the residual functional capacity to perform the full range of light work; and

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, jobs exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on February 14, 2011, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986);

Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ's findings regarding her mental impairment fail to resolve conflicts in the medical opinion evidence; (2) the ALJ erred in concluding that plaintiff's impairments do not meet Listing 12.06(b); (3) the ALJ failed to set forth clear and convincing reasons to reject her testimony as not credible; (4) the ALJ's residual functional capacity finding is not supported by substantial evidence; (5) the ALJ erred by relying on vocational expert testimony offered in response to hypothetical questions that did not accurately describe plaintiff; and (6) the Appeals Council erred by failing to review the entire record following receipt of new and material evidence regarding the duration of plaintiff's mental impairments.

### A.   **Evaluation of Medical Opinions**

Plaintiff's first and fourth arguments relate to the ALJ's evaluation of the medical opinion evidence relating to her mental and physical impairments.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

3

1   professional, who has a greater opportunity to know and observe the patient as an individual,

2   than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

3   (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

4   to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

5   (9th Cir. 1990).

6         In addition to considering its source, to evaluate whether the Commissioner

7   properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

8   in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

9   uncontradicted opinion of a treating or examining medical professional only for "clear and

10  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

11  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

12  by an examining professional's opinion which is supported by different independent clinical

13  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

14  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

15  rejected only for "specific and legitimate" reasons supported by substantial evidence.  See

16  Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough

17  summary of the facts and conflicting clinical evidence, states her interpretation of the evidence,

18  and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent

19  specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or

20  examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining

21  professional, without other evidence, is insufficient to reject the opinion of a treating or

22  examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to

23  any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d

24  1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported

25  opinion); see also Magallanes, 881 F.2d at 751.

26  ///

/ / /

1. <u>Opinions Regarding Mental Impairments</u>

Plaintiff argues:

> . . .[T]he ALJ should be found to have erred when he found that plaintiff's anxiety caused her to have only "mild" limitations in functioning under the "B" criteria because the Regulations require that the "special technique" used for evaluating mental impairments that the findings be made in a "consistent manner," and the State agency non-examining physician that the ALJ relied on to make his "B" criteria findings did not determine that she had an anxiety disorder, and except for Dr. Azevedo's determination that she had "mild" restriction of her ability to manage activities of daily living his other "B" criteria determinations are inconsistent with Dr. Azevedo's determinations and are not supported by the evidence of record (citations omitted).

Plaintiff adds that the ALJ failed to resolve inconsistencies between Dr. Azevedo's assessment and that of the state agency doctor.

As to medical opinions relating to plaintiff's mental impairments, the ALJ first addressed a report prepared by agency examining psychologist, Dr. Azevedo, Ph.D.:

> The claimant was . . . seen for a psychological consultative examination on February 21, 2007, with Dr. Azevedo, Ph.D. The claimant reported back pain, comprehension problems, auditory hallucinations, anxiety, and depression. The claimant reported that she hears voices. She also reported having paranoid thoughts, stating "I know people are talking about me." She reported having suffered from anxiety and depression since her childhood years, increasingly since she stopped using drugs. She complained of being depressed, irritable, and anxious, preferring to isolate herself from others most of the time. She stated "I can't go grocery shopping alone. I go with my boyfriend and get out." She reported having moderate levels of depression, severe anxiety, initial and middle-stage sleep disturbance, poor memory and concentration, poor appetite levels, anhedonia, a lack of social interest, and occasional suicidal ideation with no plan or intent. She reported that she presently lives in a trailer with her fiancé. She is able to complete all of her own personal grooming and hygiene, but she rarely does any cooking, cleaning, or shopping. She denied having any friends, other than her fiancé. She enjoys reading and watching TV. She reported having a history of methamphetamine dependence, beginning at age 16 with intravenous use by her early 20's. Her last use of this drug was about three years ago. She has never attended therapy for emotional problems. She has not been hospitalized for psychiatric treatment. The claimant presented for the testing and interview 35 minutes early. The claimant was cooperative and pleasant during the examination. Mental status exam showed the claimant had fair eye contact. Her mood was anxious and depressed. Her affect was

> consistent to thought content with a moderate range of emotional expression. She was alert and oriented to time, place, person, and situation. Reality testing revealed some paranoia. Her thought processes were somewhat disorganized. She did not appear to be responding to any internal stimuli during the evaluation. Her insight and judgment were both impaired. She was able to perform both serial 3's and 7's forward but not backward. She was able to accurately spell the word "world" backwards. Her calculations ability to add simple sums of money was intact. Her memory of three items was accurate for immediate recall, two of three items after a delay of five minutes, and one of three items after a delay of 20 minutes. She was able to recite five digits forward and three digits backward upon immediate recall. She reported having been incarcerated in jail three or four times, secondary to possession of narcotics. She had been in jail during the past year or so. Dr. Azevedo's diagnostic impression Axis I: post-traumatic stress disorder, with possible psychotic features generalized anxiety disorder, chronic, methamphetamine dependence, in full sustained remission; Axis II: paranoid, avoidant, and dependent personality features, rule out borderline intellectual functioning; Axis V: assessed with a GAF of 50. The claimant has the ability to understand, remember, and carry out one-step instructions. She has moderate to marked concentration persistence and pace problems. She has marked limitations responding to work stresses and interacting appropriately with supervisors, co-workers, and the general public. She had mild problems with activities of daily living (Exhibit 8F).

The ALJ next addressed the state agency examining doctor's conclusions:

> The state agency physician opined that the claimant could perform light work (Exhibit 4F). The state agency physician completed a psychiatric review technique form on April 30, 2007. The doctor stated that the claimant had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, and pace. There were one or two repeated episodes of decompensation (Exhibit 10F).

Next, the ALJ discussed plaintiff's treatment at Butte County Behavioral Health:

> The claimant was seen at Butte County Behavioral Health on September 16, 1998; she was prescribed medication. However, the following month her medications were discontinued. The claimant was not seen again until November 8, 2007, to establish care and she was seen by Dr. Buckley. The claimant reported that she lost custody of her 5 children in 1998 due to drug abuse. She reported she has been clean and sober for two years. She complained of long history of depressive symptoms, such as hopelessness, suicidal thoughts, decreased sleep, nightmares, social isolation, auditory hallucinations, mood swings, decreased concentration and memory, panic disorder, and agoraphobia. The claimant was started on Seroquel and Depakote. She was diagnosed with bipolar I, depressive, with psychotic features, panic disorder with agoraphobia. Her treatment was to include counseling and education. In a follow up visit on

6

>November 20th, the claimant stated her sleep was okay on Seroquel. She reported auditory hallucinations and she was started on Abilify. On November 27th, the claimant reported decreased auditory hallucinations. She stated her mood and affect was better. The voices were not bad on Abilify; the physician decreased Abilify. She reported that Prozac works very well. . . . In December the claimant stated she hears no voices on Abilify. Her mood was okay, no audio hallucination was noted. Her speech was clear and motor activity was within normal limits. Dr. Buckley reported that the claimant was responding to medication with no side effect from medications. In January 2008 the claimant was unable to name five symptoms. She stated she was sleeping a full eight hours, she is able to go grocery shopping with her boyfriend. No suicidal, homicidal [ideation] was noted. There was no sleep disturbance or appetite disturbance. Her motor activity was within normal limits. The physician stated that the claimant was stable. The clamant was not seen until July 2008; the claimant reported major anxiety attacks; she reported that she was about to get evicted. She reported not hearing any voices. Dr. Buckley completed a mental assessment of the claimant. He reported that the claimant had no ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, or function independently. She has no ability to understand, remember, and carry out instructions. She has no ability to relate predictably in social situations or demonstrate reliability, due to his findings of panic and agoraphobia (Exhibit 11F). . . .

The ALJ addressed the weight assigned to the medical opinion evidence as follows:

>As for the opinion evidence, the residual functional capacity as based upon the findings of the state agency physician who opined that the claimant could perform light work. The opinions of the state agency physician are consistent with the remainder of the record which fails to document significant clinical findings to substantiate the claimant's contention that she is disabled and precluded from all work activities. The undersigned concurs. Also, Dr. Azevedo opined that the claimant was able to understand and carry out simple repetitive tasks.
>
>It is clear that the claimant's mental impairments are not disabling. The state agency assessment reflects mild limitations in activities of daily living, mild in maintaining social functioning, and mild limitation in concentration, persistence, and pace. This assessment is credited. This would preclude her from performing any of her past relevant work but would not preclude occasional interaction with others or working in jobs dealing with things rather than people.
>
>Furthermore, the undersigned found that Dr. Buckley's opinion was not reasonably well supported by the Butte County medical records and was inconsistent with the overall evidence in the file. The physician's assessment does not contain clinical findings to support his assessment and the claimant's limitations. There does not appear to be any records or treatment from Butte County between 1998 and November 2007. The

7

> records showed that the claimant was oriented, her mood was okay, motor activity was within normal limits, and she was stable on her medications. Her speech was clear, and no auditory hallucinations were noted. Dr. Buckley reported that the claimant was responding to medication with no side effects from medications. In January 2008 she was unable to name five symptoms. She stated she was sleeping a full eight hours and she was able to go to the grocery store with her boyfriend. The claimant was not seen again until July 2008, at that time the claimant complained of major anxiety because she was about to get evicted. The undesigned finds that Dr. Buckley's opinion is not consistent with the medical record as a whole.

Plaintiff's argument – repeated throughout her brief – that the ALJ failed to resolve conflicts in the medical opinion evidence is unpersuasive. To the contrary, the hearing decision reflects that the ALJ considered the competing medical opinions and resolved any conflicts. Specifically, the ALJ set forth the objective findings, set forth the various medical opinions, and set forth reasons for accepting one opinion over another. For example, as to the Butte County records containing Dr. Buckley's opinion, the ALJ outlined the unremarkable objective findings (that plaintiff's mood was okay; that she was stable; that she was sleeping well; that hallucinations had stopped; etc.), and concluded that the objective findings are inconsistent with the extreme limitations noted by the doctor. The ALJ conducted similarly appropriate analyses with respect to the other medical opinions.

   2.   <u>Opinions Regarding Physical Impairments</u>

As stated above, the ALJ in this case concluded that plaintiff has the residual functional capacity to perform the full range of light work with no special limitations noted. Plaintiff argues that the ALJ failed to resolve conflicting medical evidence regarding her ability to stand/walk in an eight-hour day. According to plaintiff, she is limited to no more than two hours of standing/walking, as opined by Dr. Lewis, and this limitation precludes light work. Plaintiff also argues that the ALJ's analysis of her mental impairments is flawed.

As to Dr. Lewis' objective findings, the ALJ stated:

> The claimant was seen for an orthopedic evaluation on July 9, 2006, with Dr. Lewis. The physician stated that he had a chance to review the

> available medical records of the October 20, 2004 fall. The claimant complained of low back pain. She reported that she worked as an iron-worker for 3 1/2 years prior to her injury. In describing her daily activities, the claimant reported that she can walk two blocks, climb about one flight of stairs, stand for 15 minutes, and sit for 10 minutes. She is able to shop for herself. She does not drive a car, as she has no license. She is able to wash dishes, take out the garbage, but has difficulty doing yard work because of pain. She can fix meals, bathe herself, dress herself, and feed herself. She ambulates without an assistive device. Her medications include Tylenol and Ibuprofen. Physical exam showed the claimant is able to climb on and off the examination table, and put on and take her shoes off independently. The claimant's height and weight was 5'2 1/2" and 199 pounds. Her blood pressure was 107/61. She had a normal gait. She was able to perform a deep-knee bend without difficulty and able to stand from a sitting position without the use of her arms. Sensation was decreased in the right hand and right leg subjectively as compared to the left side. The claimant had bilateral sacrolitis, but has not received medical treatment for this. The claimant was diagnosed with chronic low back pain, right knee patelofemoral syndrome, and history of old right ankle fracture with full range of motion in the right ankle, and myofascial neck pain. . . .

The ALJ then summarized Dr. Lewis' sit/stand/walk opinion as follows:

> . . . Dr. Lewis opined that the claimant could stand/walk two hours in an eight hour workday and she can sit six hours in an eight hour workday. . . .

The ALJ concluded: "The undersigned finds that sedentary is much too restrictive; based upon the exam findings the claimant should be capable of light work."

Plaintiff argues that the ALJ's analysis of Dr. Lewis' stand/walk limitation is flawed because the ALJ did not explain how he resolved the conflict between this doctor's opinion and other opinions in the record. The court does not agree. The ALJ clearly stated that Dr. Lewis' conflicting opinion was rejected because his stand/walk limitation to no more than two hours, which would be consistent with sedentary work, is not supported by the doctor's own objective findings. This is both a specific and legitimate reason to reject Dr. Lewis' extreme stand/walk limitation. See Meanel, 172 F.3d at 1113 (rejecting treating physician's conclusory, minimally supported opinion).

/ / /

/ / /

///
///
///

### B. Listings Analysis

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

Plaintiff argues that the ALJ erred in concluding that her mental impairment does not medically equal or meet an impairment listed in the regulations. As to the Listings, the ALJ stated:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.08 and 12.09. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has mild restriction. In social functioning, the claimant has mild difficulties. With regard to concentration, persistence, or pace, the claimant has mild difficulties. As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, each of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria

are not satisfied. Nor are the "C" criteria satisfied.

///

///

Plaintiff argues that the ALJ's Listings analysis is flawed ". . .because the ALJ could be found to have erred by failing to set forth any explanation in regards to how he resolved the inconsistencies between his diagnosis finding that she had the impairment of 'anxiety' (Tr. 26) and the State agency non-examining physician's diagnostic determination that she had 'Personality Disorder' and 'Substance Addiction Disorder' (Tr. 313). . . ." To the extent plaintiff assigns error because one doctor rendered a diagnosis of anxiety and another doctor rendered a different mental health diagnosis, the court finds no error because, ultimately, it is the opinions on functional limitation and not the underlying diagnosis that is relevant. In other words, even if the ALJ did not resolve any conflicts among the doctors as to the most appropriate diagnosis for plaintiff's mental impairments, the ALJ correctly analyzed the opinions on functional limitations resulting from mental impairments, regardless of the diagnostic cause of such impairments.

### C. **Plaintiff's Credibility**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

11

and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

///

///

///

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

///

///

///

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

> The claimant alleges significant limitations and she contends that she cannot work. The claimant's own residual functional capacity assessment at the hearing was grossly embellished and exaggerated. The claimant

> indicated that she does no household chores or activities of daily living. There is no medical pathology documented anywhere in this record which would support an unproductive lifestyle. Thus, the undersigned finds the claimant's credibility to be poor.
>
> While the claimant has had some physical complaints she does not see her physician on a regular basis, and the findings are very minimal. So minimal that they do not justify the claimant's contention that they keep her from working. She was seen in September 2006 for left ear pain and in October for headache. She was treated with medications. In December 2006 x-rays of the cervical and lumbar spine were taken. There are no emergency room treatments, no surgeries, or hospitalization. She has not received or been referred to for trigger point injections, acupuncture, or chiropractic treatment. She was seen for an orthopedic evaluation in July 2006 at which time she was able to climb on and off the exam table, put on and take off her shoes independently, and perform deep knee bends without difficulty. She had a normal gait. The examiner noted at the time that the claimant was not being treated or seeing anyone for back pain.
>
> The claimant was not seen again until February 21, 2007, for a consultative psychiatric evaluation secondary to her complaints of being emotional and unable to get along with others. The claimant has no history of psychiatric hospitalization and was noted on the February 21, 2007, examination not to be seeing any psychiatrist. The claimant has never attempted suicide. The claimant was diagnosed as having anxiety disorder. Mental status examination revealed that the claimant was cooperative and able to perform serial sevens and recall items given to her despite her complaints of being unable to concentrate and having difficulty remembering things. She did not appear to be responding to any internal stimuli during the evaluation. Her insight and judgment were both impaired. She was able to perform both serial 3's and 7's. Dr. Azevedo found that the claimant was able to understand, remember, and carry out simple instructions.
>
> Although a psychiatric consultative examination was performed, there is no indication that the claimant has been treated by a mental health specialist, been hospitalized, or received psychiatric treatment. In any event, the records do not show the presence of a severe mental impairment over any 12 month period resulting in at least a marked impairment in daily activities, social functioning, or concentration.
>
> The evidence consistently shows that the claimant's subjective complaints are much worse than the objective findings as evidenced by the record.

The ALJ then discussed the medical opinion evidence (discussion reproduced above), and concluded:

> Based on the review of the evidence above, the undersigned concludes that the claimant's allegations regarding pain and dysfunction are only partially credible. . . .

14

1 Plaintiff argues: (1) the medical evidence supports her subjective testimony; (2) the ALJ erred
2 with respect to analysis of her daily activities; and (3) the ALJ failed to make specific findings as
3 to which portions of plaintiff's testimony were found to be not credible.
4 / / /
5 / / /
6 　　　　　In this case, the ALJ rejected plaintiff's subjective testimony for two main
7 reasons.  First, the ALJ noted the largely unremarkable objective clinical findings which do not
8 support the severity of symptoms claimed by plaintiff.  In addition, the ALJ noted the multi-year
9 period during which plaintiff sought no mental health treatment whatsoever.  These two reasons,
10 taken together, support the ALJ's credibility finding.

####    D.    **Hypothetical Questions**

12 　　　　　The ALJ may meet his burden under step five of the sequential analysis by
13 propounding to a vocational expert hypothetical questions based on medical assumptions,
14 supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v.
15 Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational
16 Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the
17 ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,
18 1341 (9th Cir. 1988).
19 　　　　　Hypothetical questions posed to a vocational expert must set out all the
20 substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v.
21 Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's
22 limitations, the expert's testimony as to jobs in the national economy the claimant can perform
23 has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While
24 the ALJ may pose to the expert a range of hypothetical questions based on alternate
25 interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's
26 determination must be supported by substantial evidence in the record as a whole.  See Embrey

v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

According to plaintiff, the ALJ relied on vocational expert testimony in response to hypothetical questions which did not accurately account for her physical and mental limitations. As discussed above, the court finds no error with respect to the ALJ's conclusions regarding plaintiff's physical and mental limitations. The hypothetical question posed to the vocational expert which elicited the testimony relied upon by the ALJ accurately reflected plaintiff's residual functional capacity.

### E. Denial of Review by Appeals Council

Plaintiff argues that the Appeals Council erred by not undertaking further review of her case, particularly in light of evidence submitted after the administrative hearing. According to plaintiff:

> . . . [T]he Appeal Council should be found to have erred in denying the request for review of her case and not remanding her case for further administrative proceedings in order to fully and fairly develop the record regarding the severity and duration of her mental impairment and the limitations on her residual functional capacity to perform other work in the national economy because the new evidence had a "reasonable probability" of changing the outcome of the case. Booze v. Secretary of Health and Human Services, 734 F.2d 1381 (9th Cir. 1984).

Plaintiff's new evidence purports to show that her mental impairments could be expected to last the required 12-month minimum duration and that such evidence would have altered the outcome of the case. This analysis is flawed in that the ALJ's analysis of plaintiff's mental impairments turned on the finding that they were not sufficiently limiting, not that they could not be expected to last the required minimum duration. Thus, the new evidence presented by plaintiff on the issue of duration would not have changed the ALJ's conclusion on the issue of limitation.

/ / /

/ / /

/ / /

///

///

///

///

///

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Docs. 15 & 16) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 19) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  September 26, 2012

　　　　　　　　　　　　　　　　　　　　　　　　　
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE